IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. KENNETH EUGENE LEHRER, | § § § | |
| Plaintiff | § | |
| vs. | § | C.A. NO. 4-11-cv-00132 |
| | § | |
| TIM CONNELLY, | § | |
| LARRY J. SIGGELKOW, | § | |
| HAROLD P. GEWERTER, and | § | |
| JASON G. LANDESS | § | |
| Defendants | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

PLAINTIFF, **DR. KENNETH EUGENE LEHRER**, complains of**, TIM CONNELLY, LARRY J. SIGGELKOW**, **HAROLD P. GEWERTER,** and **JASON G. LANDESS** (collectively referred to as "Defendants")**,** and would respectfully show this Honorable Court the following:

**NATURE OF THE ACTION**

1. This is an action requesting payment for services rendered, or in the alternative an action for unjust enrichment, just compensation under the theory of quantum merit and for fraud.

**PARTIES**

2. Plaintiff, Dr. Kenneth Lehrer (hereinafter "Plaintiff" and "Dr. Lehrer"), is an individual residing at 5555 Del Monte Drive, #802, Houston, Texas 77056.

3. Upon information and belief, Defendant, Tim Connelly (hereinafter "Connelly"), is an individual who may be served at 1775 Crestview Ave., Seal Beach, California 90740, or wherever he may be found. Connelly was served with process on February 25, 2011, but has not filed an answer.

4. Upon information and belief, Defendant, Larry Siggelkow (hereinafter "Siggelkow"), is an individual who may be served at 2705 Airport Drive, North Las Vegas, Nevada 89032, or wherever he may be found. Siggelkow has been served and filed a Motion to Dismiss or in the Alternative Motion to Transfer Venue. Docket No. 6

5. Upon information and belief, Defendant, Harold P. Gewerter (hereinafter "Gewerter"), is an individual who may be served at 2705 Airport Drive, North Las Vegas, Nevada 89032, or wherever he may be found. Gewerter has been served and filed a Motion to Dismiss or in the Alternative Motion to Transfer Venue. Docket No. 6

6. Upon information and belief, Defendant Jason G. Landess[1] (hereinafter "Landess"), is and individual who may be served at 7054 Big Springs Ct., Las Vegas, Nevada, 89113, or wherever he may be found.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court arises under the diversity jurisdiction and specifically under 28 U.S.C.1332(a). Plaintiff seeks an award in excess of $75,000.00.

8. Personal jurisdiction over the Defendants comports with the United States Constitution and the Constitution of the State of Texas because the Defendants have committed and continue to commit, or have contributed and continue to contribute to, acts related to the issues in this action, or otherwise have sufficient contacts with the state.

9. Venue is proper in this judicial district under the provision of 28 U.S.C. § 1391(a).

---

[1] Plaintiff received notification that Jason Landess filed for chapter thirteen bankruptcy on November 8, 2010. The matter is currently pending in the United States District Court of Nevada, Las Vegas Division under Cause No. 10-31198-mkn. Due to the automatic stay, Plaintiff did not include Landess as a defendant in the original filing of this matter. Since the original filing, Landess' bankruptcy was dismissed for failure to make plan payments and denial of confirmation. *See* Ex. A. Therefore Plaintiff amends its complaint to add Landess as a defendant in this matter.

## FACTUAL BACKGROUND

10. Dr. Lehrer is an economist with expertise in modeling damages, including lost profits, anticipated profits and lost earnings. Dr. Lehrer holds himself out as an expert and routinely provides his services in furtherance of litigation.

11. Due to his expertise, Landess contacted Dr. Lehrer June of 2002 at his office in Houston, Texas. *See* Ex. B.

12. Landess contacted Dr. Lehrer at his Houston, Texas office in reference to litigation then pending both in Las Vegas, Nevada and southern California. This litigation concerned the invention, development, testing and ultimate approval of the Arachnophlebectomy Needle (hereinafter "Needle"). This Needle was a new medical device used in the treatment of spider veins. The Needle ultimately received FDA approval for use in the United States.

13. Upon information and belief, Landess entered into a business relationship with Marilyn Miglin ("Miglin") and Dr. Dennis Gordon ("Gordon") to manufacture and market the Needle. Upon information and belief, they formed Advance Medical Products ("AMP") in furtherance of this endeavor.

14. The first lawsuit, brought in Las Vegas, Nevada, was styled *Jason G. Landess v. Dennis Gordon, Marilyn Miglin and Duke Miglin* (hereinafter the "Nevada Case"). Landess brought the suit alleging Miglin conspired with others to steal the books and records in order to destroy the initial business agreement and thereby reap the rewards from the sale of the Needle for herself. Dr. Lehrer was retained as an expert to render an opinion on the lost profits and damages related to Miglin's improper actions.

15. Dr. Lehrer, working form his office in Houston, Texas, conducted significant research to develop a first class and fully defensible economic model of the potential profits

and/or economic damages suffered because of Miglin's improper actions. Dr. Lehrer was particularly qualified for this task due to his expertise in economics, corporate finance and medical economics.

16. Upon information and belief, Jimmerson represented Landess in the Nevada Case.

17. Upon information and belief, Siggelkow owned stock in AMP.

18. In a second lawsuit, Siggelkow was the representative shareholder of AMP who sued Miglin and others for destroying and interfering with AMP. This case was styled *Larry Siggelkow as Representative Shareholder of Advance Medical Products v. Dennis Gordon, Marilyn Miglin and Duke Miglin* (hereinafter the "Siggelkow Representative Shareholder Case"). This case had similar allegations against Miglin as in the Nevada Case.

19. Dr. Lehrer, working form his office in Houston, Texas, provided additional expert services for the Siggelkow Representative Shareholder Case to develop a first class and fully defensible economic model of the potential profits and/or economic damages suffered because of Miglin's improper actions. Dr. Lehrer was particularly qualified for this task due to his expertise in economics, corporate finance and medical economics.

20. Upon information and belief, Gewerter represented Siggelkow and the shareholders in the Siggelkow Representative Shareholder Case.

21. Gewerter also retained Dr. Lehrer to create economic damage reports, give depositions, assist in depositions and give testimony at trial. The majority of Dr. Lehrer's services were performed in Dr. Lehrer's Houston office. These services included research, drafting of reports, reviewing deposition testimony and conducting phone conferences in furtherance of the case. In furtherance of the cases, Dr. Lehrer performed countless hours of

research by utilizing the Texas Medical Center Library located in the Texas Medical Center of Houston, Texas.

22. Gewerter gave Dr. Lehrer his personal guaranty that he and Siggelkow would pay for his services.

23. The Siggelkow Representative Shareholder Case was consolidated with the Nevada Case.

24. The Landess suit, due in substantial part to the expert testimony of Dr. Lehrer, resulted in a verdict against Miglin and the other named defendants in the amount of sixteen million, eight hundred thousand dollars ($16,800,000.00).

25. Connelly obtained the rights from Miglin to market and sell the Needle in the state of California. Upon information and belief, he formed Western Medical Devices ("WMD") to market and sell the Needle in California. Connelly was also the chief executive officer of WMD. WMD purchased the Needles from AMP.

26. Connelly and WMD also sued Miglin in California for destroying and interfering with AMP's business. The style of the case was *Western Medical Devices v. Marilyn Miglin et al* (hereinafter the "California Case").

27. Connelly also retained Dr. Lehrer to create economic damage reports, give depositions, assist in other depositions and give testimony at trial. The majority of Dr. Lehrer's services were performed in Dr. Lehrer's Houston office. These services included research (at the Texas Medical Center Library as set forth in ¶ 21), drafting of reports, reviewing deposition testimony and conducting phone conferences in furtherance of the case.

28. The Defendants convinced Dr. Lehrer not to bill on a month to month basis, but instead wait for the resolution of the cases.

29. In October of 2003 Dr. Lehrer proposed a payment plan to Landess. Landess responded with his acceptance of Dr. Lehrer's proposal. Dr. Lehrer proposed Landess and Connelly to each pay $10,000 to Dr. Lehrer up front and after the cases were closed, Landess would pay an additional $25,000, Connelly would pay an additional $25,000 and an additional undetermined amount would be paid by Landess. These amounts were based on Dr. Lehrer providing services to the Defendants for no more than two (2) years. Although Landess agreed to Dr. Lehrer's proposal, no sums were remitted to Dr. Lehrer.

30. By early 2007, all of the cases had come to a close. This was five years after Landess first retained Dr. Lehrer. In furtherance of what turned out to be multiple lawsuits, Dr. Lehrer, at the direction of the Defendants, worked hundreds of hours to research and evaluate the damages caused by Miglin, prepare reports, and provide testimony both at deposition and trial over a five year period in both Nevada and California.

31. With the cases at their respective ends, Dr. Lehrer turned to the Defendants for payment. Rather than rewarding Dr. Lehrer for his hundreds of hours of work, the Defendants elected to shun him and refused to issue payment. Dr. Lehrer sent correspondence demanding payment, but the Defendants have failed to respond to his demands.

32. For hundreds of hours of work over a five year period, Dr. Lehrer received a mere $40,000. This pales in comparison to what he was promised, and what he expected to be paid. The Defendants knew his rates were in the range of $175.00 to $250.00 per hour during the period of time he provided services to them, and knew he exerted hundreds of hours of services on their behalf.

33. Dr. Lehrer made himself available to the Defendants 24 hours a day, 7 days a week. Over the five year period, Dr. Lehrer, working from his Houston, Texas office: 1)

prepared countless economic damage reports and exhibits, 2) performed economic analysis, 3) prepared rebuttal research, 4) attended and reviewed rebuttal depositions, 5) gave three depositions, 6) testified live twice, 7) made multiple trips to Los Angeles and 8) made multiple trips to Las Vegas.

## I.   COUNT I: BREACH OF CONTRACT

34.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 33 of this Pleading as if fully set forth herein.

35.   In June of 2002, Dr. Lehrer and Landess entered into a valid and enforceable contract. Under the terms of the contract, Dr. Lehrer was to provide expert opinion on the lost profits and damages related to the Nevada Case in return for adequate compensation.

36.   In June of 2002, Dr. Lehrer entered into a valid and enforceable contract with Connelly and WMD. Under the terms of the contract, Dr. Lehrer was to provide expert opinion on the lost profits and damages related to the California Case in return for adequate compensation.

37.   In mid 2002, Dr. Lehrer entered into a valid and enforceable oral contract with Siggelkow and Gewerter. Under the terms of the contract, Dr. Lehrer was to provide expert opinion on the lost profits and damages related to the Siggelkow Representative Shareholder Case in return for adequate compensation.

38.   Over a five (5) year period Dr. Lehrer performed all the services that were asked of him from the Defendants. These services include, but are not limited to: 1) preparing countless economic damage reports and exhibits, 2) performing economic analysis, 3) preparing rebuttal research, 4) attending and reviewing rebuttal depositions, 5) giving three depositions, 6)

providing live testimony in court, 7) making multiple trips to Los Angeles and 8) making numerous trips to Las Vegas.

39. Defendants breached their contracts by not compensating Dr. Lehrer for his services.

40. Defendants' breach caused injury to Dr. Lehrer, which resulted in Dr. Lehrer not being adequately compensated for services performed. In addition, Dr. Lehrer lost potential income by focusing on the Defendants' cases rather than looking for other work. Dr. Lehrer's damages for the Defendant's breach are in excess of $75,000.00.

## II. COUNT II: UNJUST ENRICHMENT

41. Plaintiff incorporates by reference the allegations of paragraphs 1 through 33 of this Pleading as if fully set forth herein.

42. In the alternative, Defendants will be unjustly enriched if they are allowed to retain the benefit conferred on them without compensating for the reasonable value of the services provided by Dr. Lehrer.

43. Defendants received the benefit of Dr. Lehrer's services for a period of five (5) years. During the five (5) year period Dr. Lehrer provided services including, but not limited to: 1) preparing countless economic damage reports and exhibits, 2) performing economic analysis, 3) preparing rebuttal research, 4) attending and reviewing rebuttal depositions, 5) giving three depositions, 6) providing live testimony in court, 7) making multiple trips to Los Angeles and 8) making numerous trips to Las Vegas

44. Defendants intended to obtain the benefit of Lehrer's services given the fact they hired him and used his services to improve their position in the multiple lawsuits.

45. Dr. Lehrer's services provided great benefit to the Defendants and their lawsuits, including a jury verdict of over sixteen million dollars ($16,000,000.00). The Defendants knew that such benefit belonged to Dr. Lehrer.

46. The Defendants took undue advantage of Dr. Lehrer by utilizing his services for five (5) years and failing to compensate him for said services. The compensation now due Dr. Lehrer is in excess of $75,000.00.

### III.   COUNT III: QUANTUM MERIT

47. Plaintiff incorporates by reference the allegations of paragraphs 1 through 33 of this Pleading as if fully set forth herein.

48. Dr. Lehrer provided Defendants with expert services in connection to three lawsuits for which the Defendants accepted such services.

49. Dr. Lehrer's services provided great benefit to the Defendants. Dr. Lehrer's services were a necessity to the Defendants' lawsuits. Dr. Lehrer's reports, depositions, and assistance greatly improved the Defendants' position in their various lawsuits and ultimately resulted in one jury verdict in excess of sixteen million dollars ($16,000,000.00).

50. Defendants agreed to provide and knew that Dr. Lehrer expected adequate compensation when they requested his services.

51. Because Dr. Lehrer expected compensation, Defendants' acceptance of his services without adequate compensation resulted in Dr. Lehrer being inadequately compensated.

52. Defendants' actions have resulted in damages in excess of $75,000.00 to Dr. Lehrer.

## IV. COUNT IV: PROMISSORY ESTOPPEL

53. Plaintiff incorporates by reference the allegations of paragraphs 1 through 33 of this Pleading as if fully set forth herein.

54. Defendants promised Dr. Lehrer that they would compensate him for his services performed related to the Defendants' three lawsuits.

55. Dr. Lehrer relied on the Defendants' promise by performing various services related to the Defendants' lawsuits before being compensated. It was reasonable for Dr. Lehrer to perform such services on the reliance that he would be paid in the future.

56. Defendants knew that Dr. Lehrer was only performing these services because the Defendants promised to pay him in the future.

57. The injustice to Dr. Lehrer will only be avoided if Defendants' promise to compensate Dr. Lehrer is enforced. Dr. Lehrer provided five (5) years of services to the Defendants and he is entitled to adequate compensation.

58. Dr. Lehrer's reliance on the Defendants' promise resulted in Dr. Lehrer being injured. He was injured by not receiving adequate compensation for his services and by passing on alternative paying work. Dr. Lehrer's injuries are in excess of $75,000.00.

## V. COUNT V: FRAUD

59. Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of this Pleading as if fully set forth herein.

60. Defendants represented to Dr. Lehrer that they would pay him adequate compensation for services to be rendered.

61. Defendants' representation to Dr. Lehrer was material because Dr. Lehrer would not have performed and/or continued to perform the expert witness services had he known that he was not going to be adequately compensated.

62. Defendants' representation to Dr. Lehrer was a false promise of future performance.

63. Defendants made the false representation recklessly, as appositive assertion, and without knowledge of its truth. At the time the Defendants told Dr. Lehrer that they would pay him in the future, they did not know if they would adequately compensate him.

64. Defendants made this representation knowing that Dr. Lehrer would rely on it. They knew that Dr. Lehrer would not provide his services without a guaranty from them that they would adequately compensate him in the future.

65. Dr. Lehrer justifiably relied on Defendants' false representation when he performed services before being compensated.

66. Defendants' false representation directly and proximately caused Dr. Lehrer to be injured. His was injured by not being adequately compensated for the services he performed and by passing on paying work. These injuries are in excess of $75,000.00.

## REQUEST FOR ATTORNEY'S FEES

67. Defendant's conduct as described in this complaint and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retention of the attorneys whose names are subscribed to this petition. The claims underlying this lawsuit are for rendered services. Under the Texas Civil Practice and Remedies Code §38.001, a party is entitled to an award of attorney's fees in collecting on a claim for rendered services. Plaintiff is, therefore, entitled to recover from Defendant an additional sum of money to compensate Plaintiff for a reasonable fee for the

undersigned attorney's necessary services in the preparation and prosecution of this action, as well as a reasonable fee for any and all necessary appeals to other courts.

68. In the alternative, Plaintiff requests this Court declare this case an exceptional case and award Plaintiff its attorneys' fees in accordance with 35 U.S.C. § 285.

## JURY DEMAND

69. Plaintiff requests a trial by jury.

## PRAYER

70. WHEREFORE, Plaintiff prays that a decree be entered in this case that

   a. Plaintiff be awarded damages within the jurisdictional limits of this court;

   b. Award Plaintiff his reasonable and necessary attorney's fees and costs in accordance with Texas Civil Practice and Remedies Code §38.001;

   c. Declare this case an exceptional case and award Plaintiff its attorneys' fees in accordance with 35 U.S.C. § 285; and

   d. Plaintiff be awarded such other and further relief as this Court deems just and equitable.

   e.

        Respectfully submitted,

        O'DONNELL, FEREBEE, MEDLEY & KEISER, P.C.

        By:    /s/ Jason L. Frazer
                 Jason L. Frazer
                 Federal I.D. No. 989109
                 TBN: 24067211
                 William C. Ferebee
                 TBN: 06907500
                 Federal I.D. No. 7017
                 450 Gears Road, Suite 800
                 Houston, Texas 77067
                 281.875.8200 Telephone
                 281.875.4962 Facsimile
        *ATTORNEYS FOR PLAINTIFF,*
        *DR. KENNETH EUGENE LEHRER*

## CERTIFICATE OF SERVICE

  I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document this 9th day of March, 2011 via the Court's CM/ECF system in compliance with Fed. R. Civ. P. 5(d).  Any other counsel of record will be served via United States First Class Mail on this same date.  Any parties of record who are not represented by counsel will be served at the addresses below in accordance with the Federal Rules of Civil Procedure on this same date.

Ronald E. Holub
RONALD E. HOLUB, P.C.
4144 N. Central Expressway
Suite 600
Dallas, Texas  75204
*Attorney for Defendants,*
*Harold Gewerter and Larry Siggelkow*
*214.720.9070 - facsimile*

Tim Connelly
1775 Crestview Ave.
Seal Beach, California  90740

            <u>/s/ Jason L. Frazer</u>
            Jason L. Frazer