# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

KENNETH EUGENE LEHRER,

    Plaintiff,

v.

TIM CONNELLY, *et al.*,

    Defendants.

And Related Counterclaims and Third-Party Claims

Case No. 2:11-cv-00735-LDG (CWH)

**ORDER**

Presently before the Court are the motions of Jason Frazer and O'Donnell, Ferebee, Medley & Keiser, P.C. (collectively the Texas lawyers), to dismiss the third-party claims of Larry J. Siggelkow, and Harold P. Gewerter (#61) and to dismiss the counterclaims of Tim Connelly and Jason G. Landess (#79). The non-moving parties have filed oppositions, and the Texas lawyers have filed replies. The Court will grant the motion, as it lacks personal jurisdiction over the Texas lawyers.

In January 2011, Frazer (who is an attorney in the firm of O'Donnell, Ferebee, Medley, & Keiser) filed a lawsuit in the United States District Court for the Southern District of Texas on behalf of Kenneth Eugene Lehrer. The suit, subsequently amended, named

Connelly, Landess, Siggelkow, and Gewerter as defendants. Broadly summarized, Lehrer (whose business office is in Houston, Texas) alleged that the defendants were attorneys and plaintiffs involved in several different litigations occurring in Nevada and California, that the defendants had retained Lehrer to provide services as an expert, but that the defendants failed to pay him for the services he rendered.

The district court denied the defendants' motion to dismiss Lehrer's complaint for improper venue, but granted the defendants' motion to transfer the action from the Southern District of Texas to the District of Nevada.

Upon transfer to Nevada, Gewerter and Siggelkow filed an answer and counterclaims against Lehrer. They also alleged third-party claims against the Texas lawyers for abuse of process and a violation of the Fair Debt Collection Practices Act (15 U.S.C. §1692(e) (FDCPA). As relevant to the matters presently before the Court, Gewerter and Siggelkow subsequently amended their third-party claims against the Texas lawyers, eliminating their FDCPA claim, but adding a state law claim for deceptive trade practices in violation of NRS §§ 598.0915, 598.092, and 598.0923, and a state law civil conspiracy claim. The Texas lawyers move to dismiss the third-party claims for lack of personal jurisdiction, for being improperly named as third-party defendants under Fed. R. Civ. Pro. 14, and for failure to state a claim.

Landess and Connelly also filed an answer and counterclaims against Lehrer. They also alleged third-party claims against the Texas lawyers for violation of the FDCPA, abuse of process, civil conspiracy, and deceptive trade practices. The Texas lawyers moved to dismiss the third-party claims for lack of personal jurisdiction, for being improperly named as third-party defendants under Fed. R. Civ. Pro. 14, and for failure to state a claim. Landess and Connelly then filed an amended pleading pursuant to Rule 15(a)(1), mooting the motion to dismiss. In the amended pleading, Landess and Connelly alleged the same causes of action against the Texas lawyers, but did so as counterclaims, naming the Texas

lawyers as counterdefendants. Landess and Connelly also added counterclaims for concert of action and aiding and abetting. The Texas lawyers move to dismiss the counterclaims for lack of personal jurisdiction, that the addition of them as "additional parties" under Rule 13(h) should require leave of Court, and for failure to state a claim.

<u>Addition of the Texas Lawyers as Parties</u>

Gewerter and Siggelkow added, and Landess and Connelly originally added, the Texas lawyers to this action as third-party defendants. Landess and Connelly then amended their pleading to add the Texas lawyers as counterdefendants. The Texas lawyers argue, respectively, that they cannot be added as third-party defendants under Rule 14(a), and that leave of court should be required to add them as counterdefendants.

Pursuant to Rule 14(a), "a defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it*." In their opposition, Gewerter and Siggelkow offer no argument that the Texas lawyers are liable to them for all or part of any of the claims brought against them by Lehrer. Rather, they ask the Court to allow them to amend their complaint *sua sponte* to re-align the Texas lawyers as counterdefendants. The argument correctly concedes that, as Gerwerter and Siggelkow lack any claim (or potential claim) for indemnification or contribution against the Texas lawyers, they improperly added the Texas lawyers as third-party defendants. As the Court lacks personal jurisdiction over the Texas lawyers, the Court will not *sua sponte* grant leave to Gewerter and Siggelkow leave to amend their pleading to realign the Texas lawyers as counterdefendants, as any such amendment would necessarily be futile.

The Court would note, however, that it disagrees with the Texas lawyers that Landess and Connelly should have been required to obtain leave of court to add them as counterdefendants. While Rule 13(h) establishes that the permissive addition of a person as a party to either a counterclaim or cross claim is governed by Rule 20, neither Rule

3

1  13(h) nor Rule 20 require leave of court.  As such, leave of the court is not required for the
2  filing of either an original counterclaim or an original crossclaim that adds a person as a
3  party.  Rule 15(a)(1) permits an amendment of such a pleading as a matter of course, if
4  such amendment is made within the applicable twenty-one day period.  Leave of the court
5  is only required if the amendment adding additional parties under Rule 13(h) is sought
6  pursuant to Rule 15(a)(2).  As Landess and Connelly's amended pleading was filed
7  pursuant to Rule 15(a)(1), leave of court to add the Texas lawyers as counterdefendants
8  was not required.

        Personal Jurisdiction

A two-part test establishes whether the Court has personal jurisdiction over a nonresident defendant.  First, the plaintiff must show that the state's long-arm statute confers personal jurisdiction over the nonresident.  If so, then application of the statute must be consistent with federal due process.  *FDIC v. British-American Ins. Co., Ltd.,* 828 F.2d 1439, 1441 (9th Cir. 1987); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1396 (9th Cir. 1986).  Nevada's long-arm statute, Nev. Rev. Stat. §14.065, grants jurisdiction over out-of-state defendants if the cause of action arises from certain enumerated acts, including transaction of business or tortious conduct within the state. *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1207 (9th Cir. 1980); *Wells Fargo & Co. v. Wells Fargo Express Company*, 556 F.2d 406, 414 (9th Cir. 1977).  This statute has been construed liberally, proscribed only by federal due process.  *Levinson v. Second Judicial Dist. Court*, 742 P.2d 1024, 1025 (Nev. 1987); *Videotronics, Inc. v. Bend Electronics*, 564 F.Supp. 1471, 1474 (D.Nev. 1983).  Accordingly, as the state and federal limits of jurisdiction are co-extensive, this Court need not consider whether Defendants' acts technically fall within the purview of Nevada's long-arm statute.  Rather, the Court must only decide whether the exercise of personal jurisdiction would be consistent with the

requirements of federal due process.  *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996); *Davis v. American Family Mut. Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988).

"Traditional notions of fair play and substantial justice" require that a defendant have certain "minimum contacts" with a forum state before it may be subject to the court's jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Personal jurisdiction may be either "general" or "specific."  *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 - 9 (1984).  "For a defendant to be subject to general in personam jurisdiction, it must have such continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995).

When a defendant's contacts do not invoke general jurisdiction, specific jurisdiction may nevertheless be invoked if the defendant's contacts give rise to the cause of action being asserted.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  To establish that specific jurisdiction comports with due process, a plaintiff must show: (1) that the nonresident defendant purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws; (2) that the claim arises out of the defendant's forum-related activities; and (3) that the exercise of jurisdiction is reasonable.  *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

Finally, the Court notes that the plaintiff has the burden of establishing that the Court has personal jurisdiction over the defendants.  *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).  While a plaintiff ultimately bears the burden of proving by a preponderance of the evidence that jurisdiction is appropriate, on a motion to dismiss and in the absence of an evidentiary hearing, a plaintiff must only make a prima facie showing of jurisdictional facts.  *Sher,* 911 F.2d at 1361.  Nevertheless, the Court may properly

1  consider written submissions by the parties, such as deposition transcripts, declarations,
2  and other evidence.  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir.
3  1995).

4       All four claimants (Gewerter, Siggelkow, Landess, and Connelly) concede that the
5  Court lacks general personal jurisdiction over the Texas lawyers.  Accordingly, the Court
6  need only consider whether the claimants have shown that the court has specific personal
7  jurisdiction.

8       Although Gewerter and Siggelkow abandoned their FDCPA claim against the Texas
9  lawyers when they amended their pleading, all four claimants argue that this Court has
10 specific jurisdiction over the Texas lawyers because Frazer sent demand letters to them in
11 Nevada that did not conform with the requirements of the FDCPA, and because Frazer
12 filed suit against them in Texas rather than Nevada, as required by the FDCPA.  Landess
13 and Connelly argue the FDCPA applies because Lehrer's claim for money owed is a "debt"
14 as defined in the FDCPA.  They do not, however, offer any specific argument that the Court
15 has specific jurisdiction over their state law claims against the Texas lawyers.  While
16 Gewerter and Siggelkow assert that they have alleged, in paragraphs 37-45 of their
17 amended third-party complaint, that the Texas lawyers violated the FDCPA (though they
18 have not alleged a claim for violating the FDCPA), they have not offered any specific
19 argument that the violations of the FDCPA applies to their state law claims other than a
20 single, cursory statement that the alleged violations of the FDCPA are the underlying acts
21 to their state law claims.

22      As presented by the parties, a threshold issue the Court must address is whether
23 the claimants have alleged, or otherwise shown, that the FDCPA applies to the alleged
24 conduct of the Texas lawyers.  The FDCPA does not govern all debts.  Rather, the FDCPA
25 governs and only applies to "any obligation or alleged obligation of a consumer to pay
26 money arising out of a transaction in which the money, property, insurance, or services

6

which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).  Having carefully reviewed the pleadings of all four claimants, the Court finds that the pleadings lack any allegation from which the Court could reasonably infer that the underlying alleged obligation owed by the claimants to Lehrer arose out of a transaction "primarily for personal, family, or household purposes."  The Court would note that the opposition of Gewerter and Siggelkow offers no argument that the alleged obligation was primarily for personal, family, or household purposes.  While the opposition of Landess and Connelly asserts generally that Lehrer's services were for their personal use and consumption, the opposition offers no argument and fails to direct the court to any evidence that Lehrer's services were primarily for personal purposes of Connelly.  Rather, the opposition only argues that Lehrer's services were for Landess' personal use and consumption.  While Landess has offered a declaration in support of his opposition, he also submitted an affidavit in this matter in connection with the motion of Gewerter and Siggelkow to dismiss for improper venue.  That affidavit as well as the record in its entirety, establishes, as a matter of law, that the underlying alleged obligation was for services that were not primarily for the personal purposes of Landess.

Landess and Connelly acknowledge the lack of any authority in which an obligation owed for expert witness services rendered in litigation was considered primarily for personal purposes.  (They make no argument that Lehrer's expert witness services were used for family or household purposes.)  They contend, however, that analogous cases involving the rendering of professional services by attorneys and doctors are helpful.  The Court disagrees.  A debt incurred for receipt of medical services rendered to a person is not analogous to the rendering of services as an expert merely because the recipient was both offered a professional service and the right to defer payment for that professional service.  The relevant issue is whether the service was rendered for a personal use.  As

such, the unpublished decision in *Kelly v. Montgomery Lynch & Assoc.*, 2008 U.S. Dist. LEXIS 30917 (N.D. Ohio 2008) is irrelevant. That attorney services can be rendered for primarily personal purposes of a client, as in *Dougherty v. Hoolihan, Neil, & Boland*, 531 F.Supp. 717 (D. Minn. 1982) only confirms that the relevant issue in determining whether a debt is covered by the FDCPA is the purpose for which the service was primarily rendered.

That Frazer's demand letters sought payment for "outstanding services on your behalf" and for "services which were of value to you" does not establish that the expert services were rendered primarily for personal purposes. The record establishes that the letters were sent to Gewerter and James Jimmerson, the attorneys in the underlying litigation for which Lehrer rendered his services. That Lehrer rendered services on behalf of either Gewerter or Jimmerson as attorneys representing clients in litigation precludes drawing an inference that the services were for personal purposes from the references to services "on your behalf" and "of value to you." Rather, the references indicate that the services were not primarily for personal purposes.

Landess' argument that Lehrer's services were obtained to determine damages he personally suffered does not establish that the services were rendered primarily for personal purposes. While Landess argues that Lehrer's services were rendered for his personal use, he does not address the allegations of Lehrer's complaint, in which Lehrer alleges that the services were rendered in support of litigation concerning the invention, development, testing and ultimate approval of a medical device for which Landess had "entered into a business relationship with Marilyn Miglin and Dr. Dennis Gordon to manufacture and market." Landess further ignores the allegation of Lehrer that Landess brought a lawsuit (for which he had retained Lehrer's services) alleging that Miglin had "conspired with others to steal the books and records in order to destroy the initial business agreement and thereby reap the rewards from the sale of the [medical device] for herself." Landess also ignores the motion to dismiss for improper venue, filed by Gewerter and

Siggelkow, in which they acknowledged that Landess (whom they identify as an attorney) and Gordon entered into a joint venture to exploit the medical device. The motion further details the efforts to commercially exploit the medical device. The motion further recites several of the details underlying the litigation initiated by Landess, including that he was a director and the CEO of AMP (the corporation formed to exploit the medical device), that Landess negotiated and obtained a stock buyout agreement with AMP (which was signed by Miglin as Chairwoman of the Board), that Miglin, Gordon and others discussed plans to push Landess out of AMP without honoring the terms of the stock buyout agreement, and that Miglin breached the agreement to purchase the stock of Landess.

In his affidavit to the motion to dismiss for improper venue, Landess asserted that in 2002 he commenced the litigation against Miglin and Gordon, and met Lehrer. He asserted that Lehrer came to Las Vegas in 2003 to discuss working as an expert witness (forensic economist) in the litigation. Landess acknowledged the companion California case, a California shareholder dispute prosecuted by Western Medical Devices, and in which Lehrer testified as an expert witness. Landess also asserted that he negotiated Lehrer's compensation in both the California case and his litigation.

Accepting as correct Landess's cursory declaration submitted with his present opposition, nothing in that declaration establishes or even suggests that Lehrer's services were for personal purposes. Landess's statements that Lehrer testified about Landess's personal losses is irrelevant, as it fails to address the material issue whether those personal losses were suffered in connection with a commercial endeavor. In his declaration, Landess attempts to distance himself from the claims of AMP, noting that his claims were distinct from the claims advanced by Siggelkow and "the medical corporation he represented, Advanced Medical Products, Inc. ('AMP')." In another affidavit (filed in connection with a motion to supplement the motion to dismiss filed by Gewerter and Siggelkow) Landess acknowledges that he was the CEO of AMP from 1999 through 2007,

9

and that AMP was a startup company for marketing a novel medical device. He further asserts that he led the team that obtained FDA approval for marketing the medical device to the American public. In short, the record as a whole, including Landess's own affidavits, establishes that the losses he suffered (and on which he now rests his claim that Lehrer's services were primarily for personal purposes) were suffered in the context of a business endeavor stemming from his efforts to commercially exploit a medical device, and that Landess initiated the underlying litigation related to that commercial enterprise.

Finally, and most critically, the Court will not overlook the allegations of Landess's amended counterclaims:

> 11. In 2002 a series of civil suits arose in Nevada relating to transactions between Advanced Medical Products, Inc.("AMP") and/or Landess and Marilyn Miglin, Duke Miglin and/or Dr. Dennis Gordon. Four of those suits were consolidated on or around 2006 into lead Case No. A449091 in the Nevada District Court, Clark County, Nevada (hereinafter the "Nevada litigation"). Those suits arose out of a business transaction involving a novel medical devices for the cosmetic treatment of spider veins known as the "Arachnophlebectomy Needle" ("APN"), AMP's primary asset.
> 12. Landess is a commercial litigator who has actively practiced law in Nevada for over 30 years. He took the lead in prosecuting and defending various claims in the Nevada litigation. He was a named plaintiff and Counterdefendant in that litigation. He was also AMP's president and one of its largest shareholders.
> 13. A similar companion case was instituted in California by Western Medical Devices, Inc. ("WMD"), a California corporation. WMD was a distributor for the APN. Tim Connelly ("Connelly") was WMD's president (hereinafter the "California litigation").
> 14. In March of 2002 the pivotal events giving rise to the Nevada and California litigations occurred. That shareholder litigation revolved around the APN, which by that time was a patented product in the United States. Some of the important damages issues in those litigations involved the need for a forensic economist to value the APN and calculate the lost profits from the collapse of AMP and WMD due to the shareholder conflict. Landess also needed a forensic economist to calculate his personal damages due to lost wages and the destruction of his personal assets, such as a promissory note for $125,000.

As alleged by Landess in his countercomplaint, the series of suits in Nevada "arose out of a business transaction involving a novel medical devices [sic] for the cosmetic treatment of spider veins known as the 'Arachnophlebectomy Needle' ('APN'), AMP's

10

primary asset." He took the lead in prosecuting and defending the various claims. He was AMP's president and one of its largest shareholders. A companion case was instituted in California. Finally, the pivotal events giving rise to all this litigation, which occurred in March 2002, was "shareholder litigation revolved around the APN, which by that time was a patented product in the United States." Landess's own allegations in his countercomplaint establish that Lehrer's services were not primarily for personal, family, or household purposes, but as an expert witness in a commercial and business dispute. The Court recognizes Landess's further allegation that he "also needed a forensic economist to calculate his personal damages due to lost wages and the destruction of his personal assets, such as a promissory note for $125,000." The allegation does not, however, negate the fact that (as Landess himself alleged) the "suits arose out of a business transaction." That Landess suffered personal damages in the business dispute does not transform the primary purpose of the suits, and the primary purpose for which Lehrer's services were used, from commercial or business into personal. The lawsuits arose out of a business transaction. Lehrer rendered his services to assist in the litigation of suits concerning a business and commercial dispute. The obligation incurred for Lehrer's services was not a debt governed by the FDCPA.

     As this matter is before the Court on the Texas lawyers' motion to dismiss for lack of personal jurisdiction, and as the Texas lawyers' sole contact with Nevada (as alleged by the claimants) are demand letters directed to them in Nevada, and as the claimants' opposition rests upon their assertion that the demand letters give rise to their claims because they violated the FDCPA, the claimants have the burden of establishing that the FDCPA applies to establish that this Court has personal jurisdiction over the Texas lawyers. Absent from the pleadings of the claimants, and absent from the opposition, is any allegation of fact that would permit the inference that Lehrer's rendering of expert witness services to them was primarily for personal purposes. Rather, the pleadings of

Landess and Connelly require the conclusion that Lehrer's services were not primarily for personal purposes. That the services were rendered to persons does not support the inference that the services were primarily for personal purposes. That the services were rendered, in part, to support a claim for damages personally suffered does not establish that those damages were not suffered in a commercial or business context. Rather, the record as a whole, including the allegations of the counterclaims of Landess and Connelly, indicates that Lehrer alleged that he rendered his services to the claimants in support of litigation initiated to protect commercial interests, and to seek redress for injuries suffered in a business enterprise. Accordingly, as the claimants' pleadings preclude a plausible inference that the underlying alleged obligation arose out of a transaction in which Lehrer's services were primarily for personal purposes, and as the claimants' opposition also fails to establish that the underlying alleged obligation concerned a "debt" as defined in the FDCPA, the claimants have failed to meet their burden of establishing that the FDCPA applies.

As the FDCPA does not apply, the remaining question before the Court is whether the Texas lawyers' sole contact directed at Nevada, that is, one demand letter sent to all four claimants and an additional demand letter sent only to Landess and Connelly, supports the Court's personal jurisdiction over the remaining state law claims. Landess and Connelly have not offered any argument regarding their state law claims. Gewerter and Siggelkow argue that their state law claims rest upon the alleged violations of the FDCPA. None of the claimants have offered any argument that the sending of the demand letters to Nevada, without more, supports personal jurisdiction of their remaining claims to the extent that those remaining claims exist without reference to alleged violations of the FDCPA.

Therefore, for good cause shown,

1  THE COURT **ORDERS** that the motions to dismiss (## 61, 79) of Jason Frazer and O'Donnell, Ferebee, Medley & Keiser, P.C. are GRANTED.  Jason Frazer and O'Donnell, Ferebee, Medley & Keiser, P.C. and DISMISSED from this action for lack of personal jurisdiction.

DATED this ___23___ day of March, 2012.

_____
Lloyd D. George
United States District Judge