1
2
3
4
5
6
7           **UNITED STATES DISTRICT COURT**
8                 **DISTRICT OF NEVADA**
9
10   KENNETH EUGENE LEHRER,
11         Plaintiff,                    Case No. 2:11-cv-00735-LDG (RJJ)
12   v.                                  **ORDER**
13   TIM CONNELLY, *et al.*,
14         Defendants.
15
16
17         Kenneth Eugene Lehrer filed this action in United States District Court, Southern

18   District of Texas.  As alleged in the amended complaint, Jason G. Landess was an attorney

19   and he and Tim Connelly were parties or involved in several different litigations occurring in

20   Nevada and California, that they had retained Lehrer to provide services as an expert, but

21   that they failed to pay him for the services he rendered.  Landess and Connelly have filed

22   an amended counterclaim against Lehrer, alleging claims against Lehrer for violating the

23   Fair Debt Collection Practices Act, 15 U.S.C. §1692(e) (FDCPA), deceptive trade practices,

24   abuse of process, civil conspiracy, concert of action, and aiding and abetting.  Lehrer now

25   moves for dismissal of all counterclaims (#81) for failure to state a claim, which motion

26   Landess and Connelly oppose (#83).  The Court will grant the motion.

<u>Motion to Dismiss</u>

Lehrer's motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), challenges whether the counterclaimants' countercomplaint states "a claim upon which relief can be granted."  In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  As summarized by the Supreme Court, a plaintiff (including a counterclaimant) must allege sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*, at 555 (citations omitted).  In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party."  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F3d 895, 900 (9th Cir. 2007).

However, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true.  *Twombly*, 550 U.S. at 555.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal* 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.,* at 1950.  Thus, this court considers the conclusory statements in a complaint pursuant to their factual context.

To be plausible on its face, a claim must be more than merely possible or conceivable.  "[W]here the well-pleaded facts do not permit the court to infer more than the

1    mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the

2    pleader is entitled to relief." *Id.*, (citing Fed. R. Civ. Proc. 8(a)(2)).  Rather, the factual

3    allegations must push the claim "across the line from conceivable to plausible."  *Twombly*.

4    550 U.S. at 570.  Thus, allegations that are consistent with a claim, but that are more likely

5    explained by lawful behavior, do not plausibly establish a claim.  *Id.*, at 567.

6        FDCPA Claim

7        The crux of Lehrer's argument that the FDCPA claim should be dismissed is

8    straightforward: he is not a "debt collector" and he did not attempt to collect a "debt" as

9    those terms are defined in the FDCPA.

10       In response to whether Lehrer was attempting to collect a debt governed by the

11   FDCPA, the counterclaimants' opposition adopts and incorporates their opposition to the

12   motion to dismiss of Jason Frazer and O'Donnell, Ferebee, Medley & Kewiser, P.C. (the

13   Texas lawyers).  For the same reasons the Court rejected the counterclaimants' argument

14   with respect to the Texas lawyers' motion, the Court again rejects the argument.  The

15   FDCPA governs and only applies to "any obligation or alleged obligation of a consumer to

16   pay money arising out of a transaction in which the money, property, insurance, or services

17   which are the subject of the transaction are primarily for personal, family, or household

18   purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §

19   1692a(5).

20       The counterclaimants' arguments, and their allegations in the countercomplaint, fail

21   to raise any inference that, as to Connelly, Lehrer's services were primarily for his personal,

22   family, or household purposes.

23       Further, the counterclaimants allege facts in their countercomplaint that do not

24   merely preclude a plausible inference that the underlying obligation is governed by the

25   FDCPA, but require a finding as a matter of law that the underlying obligation is not

26   governed by the FDCPA.  As alleged by the counterclaimants:

3

11.  In 2002 a series of civil suits arose in Nevada relating to transactions between Advanced Medical Products, Inc.("AMP") and/or Landess and Marilyn Miglin, Duke Miglin and/or Dr. Dennis Gordon. Four of those suits were consolidated on or around 2006 into lead Case No. A449091 in the Nevada District Court, Clark County, Nevada (hereinafter the "Nevada litigation"). Those suits arose out of a business transaction involving a novel medical devices [sic] for the cosmetic treatment of spider veins known as the "Arachnophlebectomy Needle" ("APN"), AMP's primary asset.

12.  Landess is a commercial litigator who has actively practiced law in Nevada for over 30 years. He took the lead in prosecuting and defending various claims in the Nevada litigation. He was a named plaintiff and Counterdefendant in that litigation. He was also AMP's president and one of its largest shareholders.

13.  A similar companion case was instituted in California by Western Medical Devices, Inc. ("WMD"), a California corporation. WMD was a distributor for the APN. Tim Connelly ("Connelly") was WMD's president (hereinafter the "California litigation").

14.  In March of 2002 the pivotal events giving rise to the Nevada and California litigations occurred. That shareholder litigation revolved around the APN, which by that time was a patented product in the United States. Some of the important damages issues in those litigations involved the need for a forensic economist to value the APN and calculate the lost profits from the collapse of AMP and WMD due to the shareholder conflict. Landess also needed a forensic economist to calculate his personal damages due to lost wages and the destruction of his personal assets, such as a promissory note for $125,000.

As alleged by the counterclaimants, the series of suits in Nevada "arose out of a business transaction involving a novel medical devices [sic] for the cosmetic treatment of spider veins known as the 'Arachnophlebectomy Needle' ('APN'), AMP's primary asset." Landess took the lead in prosecuting and defending the various claims. He was AMP's president and one of its largest shareholders. A companion case was instituted in California by a corporation, Western Medical Devices, Inc., as to whom Connelly was the president. Finally, the pivotal events giving rise to all this litigation, which occurred in March 2002, was "shareholder litigation [that] revolved around the APN, which by that time was a patented product in the United States." The counterclaimants' own allegations establish that Lehrer's services were not primarily for personal, family, or household purposes, but as an expert witness in a commercial and business dispute. The Court recognizes Landess's further allegation that he "also needed a forensic economist to

4

1   calculate his personal damages due to lost wages and the destruction of his personal

2   assets, such as a promissory note for $125,000." The allegation does not, however,

3   negate the fact that (as Landess himself alleged) the "suits arose out of a business

4   transaction." That Landess suffered personal damages in the business dispute does not

5   transform the primary purpose of the suits, and the primary purpose for which Lehrer's

6   services were used, from commercial or business into a primarily personal purpose. The

7   lawsuits arose out of a business transaction. Lehrer rendered his services to assist in the

8   litigation of suits concerning a business and commercial dispute. As the allegations of the

9   countercomplaint establish, as a matter of law, that the obligation incurred for Lehrer's

10  services was not a debt governed by the FDCPA, dismissal of the FDCPA claim with

11  prejudice is appropriate.

12      In addition, dismissal would also be warranted because the counterclaimants'

13  opposition concedes that Lehrer is not a debt collector under the FDCPA, and the

14  counterclaimants have not directed this Court's attention to any authority suggesting that a

15  non-debt collector can be held vicariously liable under the FDCPA. The only decision to

16  which the counterclaimants cite, *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507 (9th Cir. Ariz.

17  1994), is inapposite. In that decision, the Ninth Circuit recognized that *a debt collector* is

18  not shielded from liability for venue violations in actions filed by the debt collector's

19  attorney. That the Ninth Circuit also referred to the debt collector as a client of the attorney

20  that filed the suit (which the debt collecter was) does not suggest that every client of an

21  attorney is a debt collector, nor does it suggest that an attorney's non-debt collector clients

22  are liable under the FDCPA. Accordingly, as Lehrer is not a debt collector, dismissal with

23  prejudice of the FDCPA claim against Lehrer is appropriate.

24      Remaining Claims

25      Lehrer argues that all of the remaining claims must be dismissed as they rest upon

26  the allegation that he violated the FDCPA. The counterclaimants assert that the claims are

5

1  sufficient to stand of their own accord.  Having reviewed the arguments, the Court finds
2  that dismissal of the remaining claims is warranted.

3       The counterclaimants assert that they have stated a claim for abuse of process.
4  The elements of abuse of process are: (1) the defendant had an ulterior purpose in the
5  underlying lawsuit other than resolving a legal dispute, and (2) the defendant willfully and
6  improperly used the legal process to accomplish that purpose.  *LaMantia v. Redisi*, 118
7  Nev. 27, 30-31, 38 P.3d 877, 880 (2002).  As previously noted by this district, "Nevada
8  follows the rule, as does an overwhelming majority of states, that the mere filing of the
9  complaint is insufficient to establish the tort of abuse of process."  *Laxalt v. McClatchy*, 622
10  F.Supp. 737, 752 (D.C.Nev.1985).  The allegations of the counterclaim and the
11  counterclaimants' opposition are confusing as to which process they allege that Lehrer has
12  abused.  The counterclaimants allege, in paragraph 79, that Lehrer is the prime mover and
13  engineer of a continuing scheme of abuse of process.  They reference the "Krenek suit."
14  The countercomplaint fails, however, to allege that Lehrer was a party to that action.  The
15  countercomplaint also fails to allege that Connelly was a party to that litigation.  At most,
16  the counterclaimants allege that Lehrer told Krenek lies that Krenek relied upon, without
17  investigation, to file a lawsuit that named Landess, among others, as a defendant, and that
18  Lehrer promised to provide Krenek not only with expert services in that litagation but also
19  with false affidavits.  Absent from the countercomplaint, however, are any allegations
20  indicating that Lehrer improperly used a legal process in the Krenek suit against either
21  Landess or Connelly.  At most, the counterclaimants allege that Landess "warned Krenek
22  that he would be committing a serious abuse of process if he continued to prosecute
23  Jimmerson."  The counterclaimants have not offered any argument that they have standing
24  to prosecute a claim of abuse of process that accrued as to Jimmerson.

25

26

1       The only other process alleged by the counterclaimants is the present complaint of

2  Lehrer, which Lehrer filed in Texas, and which was transferred to this Court for the

3  convenience of the defendants.

4       Referencing Lehrer's allegations regarding the obligation Lehrer seeks to collect, the

5  counterclaimants argue, as the ulterior purpose, that "[i]n essence, Lehrer has knowingly

6  *invented* a claim and is attempting to prosecute that claim in order to coerce a nuisance

7  settlement with Counterclaimants."  Accepting this as the "ulterior purpose," the

8  counterclaimants have not alleged any act in connection with Lehrer's complaint which

9  permits a plausible inference that Lehrer has abused the legal process to accomplish that

10 ulterior purpose.   The counterclaimants' allegations of "numerous improper events taking

11 place after the filing of the Krenek suit" are irrelevant to whether Lehrer has abused the

12 process predicated upon Lehrer's present complaint.  A claim for abuse of process,

13 particularly one which rests upon an allegation that the complaint was filed for ulterior

14 purposes, does not rest upon unrelated improper acts, but upon improper acts in the

15 prosecution (or lack of prosecution) of the relevant process.  *See*, *Laxalt*, 622 F.Supp. at

16 752 ("There is no allegation of abusive measures taken after the filing of the complaint,

17 such as minimal settlement offers or huge batteries of motions filed solely for the purpose

18 of coercing a settlement.").  As stated in *Laxalt*, summarizing *Bull v. McCuskey,* 96 Nev.

19 706, 615 P.2d 957 (1980), "[t]he Nevada court clearly indicated the attorney abused the

20 process available to him by offering to settle the case for a minimal sum and by failing to

21 present proper evidence at trial."  *Id*.  Absent any allegation that Lehrer has engaged in any

22 improper act in prosecuting his present complaint, the counterclaimants have failed to state

23 a claim for abuse of process.

24      The counterclaimants assert that their Nevada deceptive trade practices claim

25 remains viable as, according to the countercomplaint, Lehrer has "used coercion, duress,

26 and intimidation in connection with the business transactions by misusing legal process as

1  described herein." Given that the counterclaimants have failed to state a viable claim of

2  abuse of process, their deceptive trade practices claim necessarily fails, and must be

3  dismissed.

4      Similarly, counterclaimants argue that the civil conspiracy claim is not wholly

5  dependent on the viability of their FDCPA and deceptive trade practices claims, but that it

6  may rest upon the abuse of process claim. As counterclaimants have failed to allege a

7  viable abuse of process claim, or deceptive trade practices, and as the counterclaimants

8  cannot allege an FDCPA claim, dismissal of the civil conspiracy claim is appropriate.

9      The counterclaimants have not offered any argument that either their concert of

10  action claim or their aiding and abetting claim survive the dismissal of the FDCPA claim.

11  As each of those claims expressly rely upon the assertion that the initial filing of Lehrer's

12  suit in Texas violated the FDCPA, which assertion is incorrect as a matter of law, the Court

13  will dismiss these claims with prejudice.

14      Accordingly, for good cause shown,

15      THE COURT **ORDERS** that Counterdefendant Kenneth Eugene Lehrer's Motion to

16  Dismiss Jason Landess' and Tim Connelly's Amended Counterclaim (#81) is GRANTED as

17  follows: Counterclaims I (Fair Debt Collection Practices Act), V (Concert of Action), and VI

18  (Aiding and Abetting) are DISMISSED with prejudice; Counterclaims II (Deceptive Trade

19  Practices), III (Abuse of Process), and IV (Civil Conspiracy) are DISMISSED without

20  prejudice.

21

22  DATED this ___ day of March, 2012.

23

24                                           Lloyd D. George
                                             United States District Judge
25

26

8